## DRAKEFORD *v.* ADAMS, receiver.

1. It is not essential to the maintenance of a petition by a receiver against one alleged to have in his possession money which the court has ordered shall be delivered to the receiver, for the latter to prove beyond a reasonable doubt the fact that the respondent had such money in his hands, custody or control after the passage of the order upon which such petition was based. While this fact must be clearly and satisfactorily established, it may be proved by a preponderance of the evidence, the case being in its nature purely remedial, and therefore a civil and not a criminal proceeding.

2. If the person alleged to have such money in his possession knew of the passage of the order in question and its contents, it is immaterial whence his information on the subject was derived. As to the knowledge he actually had, he is chargeable to the same extent as he would have been had he been duly served with a copy of the order in question.

   July 27, 1896.

Rule for contempt. Before Judge Lumpkin. Fulton superior court. September term, 1895.

*William W. Davies*, for plaintiff in error.
*Mayson & Hill*, contra.

SIMMONS, Chief Justice.

The receiver in the case of Elder, Dempster, Gaston & Co. Liberian Emigration Company *v.* Frank Drakeford, obtained a rule against Drakeford to show cause why he should not be adjudged in contempt for his refusal and failure to turn over to the receiver a certain fund of money belonging to the plaintiff. The case was tried before a jury, under the act of December 22, 1892 (Acts 1892, p. 65). The court submitted certain issues to the jury, which, with their answers thereto, were as follows: (1) Did defendant Drakeford have possession, custody or control of

the fund alleged by the receiver to be withheld after the time of granting the order of court appointing a temporary receiver, which order was dated March 26, 1895, and after he had knowledge or notice that such an order had been granted? Answer, Yes. (2) Did he or not have such power, custody or control when the receiver demanded it from him. Answer, Yes. (3) Is said Drakeford withholding or taking part in withholding funds ordered to be turned over to the receiver, and in his power, custody or control? Answer, Yes. (4) If yes, how much? Answer, $909.55. The defendant made a motion for a new trial, which was overruled, and he excepted.

1. The grounds of the motion for a new trial which were mainly relied upon in the argument before us were, that the court erred in refusing to charge the jury as follows: "If there is ground for any reasonable doubt of Drakeford's ability at the time the order of the court was passed and served upon him to obey said order requiring him to turn over certain funds to P. H. Adams, receiver, you should find for the defendant"; and that the court erred in not charging the jury that "they must be satisfied beyond a reasonable doubt of the truth of the allegations in the receiver's petition for a contempt rule against the defendant before they could under the law find the issues submitted to them, or any of said issues, affirmatively against the defendant."

In cases of this character the ability of the defendant to comply with the order should be clearly and satisfactorily established before the jury should find against him, but it is not essential that they should be satisfied beyond a reasonable doubt. It is not required in any civil case that the proof shall be so conclusive as to exclude reasonable doubt. Our code (§3749) declares that "in all civil cases the preponderance of testimony is considered sufficient to produce mental conviction." See the opinion in *Atlanta Journal* v. *Mayson*, 92 *Ga.* 641, where former de-

cisions of this court touching reasonable doubt in civil cases are referred to and discussed.

It was argued that this proceeding was, in its essence, a criminal proceeding, and that the rule applied in criminal cases was therefore applicable. We do not concur with counsel in this view. In all contempts, it is true, there is an element of criminality, involving as they do the wilful disobedience of orders or decrees made in the administration of justice, but a contempt proceeding is not always a criminal proceeding. A distinction is made between cases in which the proceeding is merely punitive, and those in which it is remedial, that is to say, in which the contempt consists in the refusal by a party to do something which he is ordered to do for the benefit or advantage of the opposite party, and he stands committed until he complies with the order. The substantial distinction, as stated by Judge Seymour D. Thompson, is, that "one is a mode of execution of judgments and decrees in civil cases, while the other is punishment for an offense of a criminal nature." "Criminal Contempts," 5 Crim. Law Mag. 172. And see Rapalje, Contempts, §21. In the case of *Livingston* v. *Livingston*, 24 *Ga.* 381, the point was made that a commitment for contempt for refusal to comply with an order of court to deliver up personal property was a criminal proceeding; but the court held it was not, and said the commitment was "purely remedial. It is for the exclusive benefit of the plaintiff in the proceeding." And see *Cobb* v. *Black*, 34 *Ga.* 166; *Ryan* v. *Kingsbery*, 89 *Ga.* 228. The only contempt cases we have found, or have been referred to, in which the rule that the case against the defendant must be made out beyond a reasonable doubt has been held applicable, are cases of what is called criminal contempts. This rule was established originally in felony cases, *in favorem vitæ*, at a time when death was the penalty of every felony, and was never at common law applied in civil or remedial proceedings, even though the proceeding in-

volved imprisonment as a means of enforcing the order of the court. "The true doctrine would seem to be that in cases of strictly criminal contempts, the rules of criminal evidence should be applied, while in cases where the principal or only object is to redress a private injury, any kind of evidence which will satisfy the conscience of the court [or the jury, where the case has been submitted to a jury] will suffice." Rapalje, Contempts, §126.

2. It was also contended in behalf of the defendant that before any duty to obey the order of the court would rest upon him, the order must be legally served upon him. We think that if he knew of the passage of the order or its contents, it was immaterial whence his information on the subject was derived. As to the knowledge he actually had, he was chargeable to the same extent as he would have been had he been served with a copy of the order. Osborne v. Tenant, 14 Ves. 136; United Telephone Co. v. Dale, 53 L. J. Ch. 295; Hull v. Head, 3 Edw. Chanc. 236; People v. Brower, 4 Paige, 405; Livingston v. Swift, 23 How. Prac. 1; Alvinger v. Pugh, 57 Hun, 181, aff'd, 132 N. Y. 483; Winston v. Nayson, 113 Mass. 411; Ramstock v. Roth, 18 Wis. 522; Poertner v. Russel, 33 Wis. 193, 202; Beach, Inj. §§268, 269; 4 Am. & Eng. Enc. Pl. & Prac., Contempts, 778; 5 Crim. Law Mag. 180, and cases cited.

There was sufficient evidence to support the verdict, and the court did not err in refusing a new trial.

*Judgment affirmed.*