# SUPREME COURT.

## Jane E. Lansing agt. Christopher B. Lansing.

An *attachment* may lawfully issue against a defendant for the non-payment of *alimony ;* and under it he may be committed to *close confinement* in jail.

Where it appeared that the defendant, for a year and a half after the decree against him for alimony and for costs, in an action for divorce—amounting to some $400, had not paid any part thereof, nor had he apparently, made any effort to earn money to make such payment, but had lived with and been supported by his father:

*Held,* on a motion and affidavits for his discharge on the ground of his *inability* to pay, that the facts stated on the motion did not warrant his discharge as he did not show why he had not made any effort to earn money to pay the sums required by the decree ; but rather that it appeared that he wilfully intended to avoid such payment, although he swore to his inability to pay.

*Albany Special Term, April,* 1871.

Motion to discharge defendant from imprisonment.

F. B. Mitchell, *for defendant, for the motion.*
J. H. Clute, *for plaintiff, opposed.*

Learned, J.—This is an action for divorce in which a decree was granted, September, 1869, in favor of the plaintiff. By that decree the defendant was ordered to pay the plaintiff $200 annually in quarterly payments, from April 1st, 1869, and also to pay $200 dollars costs, all of which defendant has neglected or refused to pay. An attachment was issued thereupon, returnable at the March special term, 1871, under which the defendant was required to show cause why he should not be punished for his refusal to pay. At that term, the defendant was brought into court and no cause being shown for his refusal, the court ordered the defendant to be committed to the custody of the sheriff of Schenectady county. In pursuance of that order, he was

so committed to close custody. He now moves for an order discharging him, on two grounds : 1. That the court had no authority to commit him in such a case. 2. That the defendant is unable to pay, and ought, therefore, to be discharged.

On the argument of the motion, I mentioned to the defendant's counsel, that the second ground above stated ought to have been shown in opposition to the order for commitment, but was informed that the justice holding the court had then stated, that the proper course was to make this motion, and I, therefore, am at liberty to consider that ground. The court in granting a decree of divorce at the suit of the wife, is authorized to make a decree or order compelling the defendant to provide such suitable allowance to her for her support as the court may deem just, having regard to the circumstances of the parties, respectively. (2 R. S., m. p., 145, Sec., 58). This order or decree, the court may enforce by sequestration. (2 R. S. m. p., 148, Sec., 74). The counsel for the defendant claims that this authority to sequestrate the defendant's estate, is substantially an authority to issue execution against property. But sequestration in the court of chancery was not in the nature of an execution against property. It was a process which issued where a party was in contempt; for instance, where the officer of the court has returned " non est inventus," or a " rescue" or " that he had been resisted in the discharge of his duty." (1 Barb. Chan. Prac., 67). Its object was to compel obedience to the orders of the court, and it issued sometimes when the party was in custody for contempt and persisted in his contempt. It did not require the collection of any definite amount, but commanded the sequestration to take all the personal property and all the rents and profits of the real estate. (2 Barb. Ch. Pr., 382). It is not necessary to cite cases on this subject, it is sufficient to refer to the above mentioned book of practice where the meaning of the word, and the cases in which this proceeding were

had are explained. In these days, the process is somewhat antiquated as it is not mentioned in the Code. But it had, and still has a distinct meaning, and it was and is a process intended to punish for contempt, and not simply to collect a debt.

The counsel for the defendant refers to part 3, chap. 18, title 3, of the Revised Statutes, on proceedings as for contempt. By section 1, courts of record may punish in several cases clasified under eight subdivisions. The counsel urges that this case comes under subdivision 3, being for the non-payment of a sum of money, and that an attachment cannot issue, because an execution can be awarded. But it has already been shown that sequestration is not an execution for the collection of a sum of money, but is a process of punishment for contempt, so that it is not apparent from the provisions relative to divorce, cited by the counsel, that an execution for alimony can be awarded ; and again subdivision 8 of the same section, retains attachments and proceedings for contempt as they have been usually adopted and practiced. When in a decree for a divorce the court awards alimony, the court decides that in the circumstances of the parties, respectively, it is the duty and in the power of the defendant to pay to the plaintiff the amount allowed for her support. As it was his duty to support her while she remained his undivorced wife, so it continues to be his duty now that, for his fault, she has been relieved from her marriage duties. His failure to do this is a violation of duty, and a contempt of court, unless excused by inability. The amount is settled by the court upon a consideration of the ability of the defendant to pay it. This is not the case of a debt which a defendant owes whether or not he has the means of paying. But on the basis, partly of the defendant's property and partly of his ability to earn money, the court decides that he can pay, and ought to pay so much towards the support of the woman whom he has wronged.

. The action for divorce is not an action on contract as was claimed by defendant's counsel. It is rather an action based upon a great wrong alleged to have been committed by the defendant, a wrong so great that for this and for no other the laws of God and the laws of this state permit the marriage relation to be dissolved. I think, for these reasons, that the attachment was lawfully issued for non-payment of alimony. Ought the defendant to be released from imprisonment on the ground of his inability to pay? This the court may do, perhaps, by its inherent power, and at any rate under section 20 of the last named titile. The decree was granted September 14, 1869. The defendant says, he has had no means to pay since that time, and has had nothing since then but his wearing apparel. His father says, that the defendant has lived with him for the last eight years, that he has no means of support except the father furnishes them.

It appears, however, by the papers, that negotiations have been pending for the settlement of this alimony, at a sum in gross, for which the defendant's father proposed to become security. But a part of the terms of settlement were to be that the decree should be modified so that the defendant might marry again, this of course, was found to be impossible and the settlement fell through. The defendant does not explain in his affidavit why for the year and a half since the decree, he has earned nothing. He has lived with his father, and his labor must have been worth something. It is not shown that he is a man of feeble or infirm health, and I do not understand why he has not been able to earn $200 per year, and pay the amount to his wife.

It may be that he has not real or personal property, except his clothing, but why has he none, has he been idle since the decree? If not, where are his earnings? If he had no property when the decree was granted, then it was his duty to try to earn something, he had no right to

lay idle, and because he could live at his father's house, therefore, to refuse to work and to support his wife.   From all the circumstances appearing in the affidavits, I am forced to believe, that the defendant willfully intends to avoid payment, and that if he had endeavored to comply with the decree of the court, he could have done so, and that, too, without any extraordinary effort.   I observe that the defendant on his oath, states that he was not guilty of the offense for which the decree was granted.   So far as this suit is concerned, that question is settled, whether rightfully or wrongfully, I do not know, but it is settled; if the defendant is innocent, he has the consolation of a good conscience, and the hope that some day his innocence may appear.

But it is no use now, nor does it tend to show his innocence, that he should attempt to thwart the decree of the court.   He should rather make a sincere and earnest effort to comply with the decree, and if as he says, he has been wrongfully accused, he should bear the evil hoping that time may correct the mistake.

I shall deny the motion of the defendant, without costs, but this will be without prejudice, to his renewing at any time his application to be relieved from the confinement on account of his inability to pay the alimony.*

* It seems, therefore, that the motion is denied, not on the ground of the defendant's *inability* to pay, but upon the ground that he has not shown to the court *why* he has been unable to pay.  Suppose that hereafter the defendant renews his motion, under the leave given, to be discharged on the ground of his inability to pay, and states in detail to the court all the reasons and circumstances minutely why he has not made sufficient efforts to earn money to pay the amount for which he is imprisoned, and also swears that he is still unable to pay, will he not be met by the decision of this motion as *res adjudicata* upon the question of his discharge, as he swore on the present motion positively his *inability* to pay, which must be supposed to be the basis for the motion and the only legal essential fact to be stated.  While in jail, of course he could not earn any means to liquidate indebtedness.  The facts and circumstances in reference to the reason why he had not earned money, &c., during the year and a half, might be interesting as a matter of history perhaps, but would not change or alter the essential fact of his inability to pay ; and this fact must be supposed to have been passed upon by the court on the decision of this motion.  (REP.)